UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANTHONY T. TRAPANI, | ) |
| | ) CASE NO. C13-5301-RSM-MAT |
| Plaintiff, | ) |
| | ) |
| v. | ) REPORT AND RECOMMENDATION |
| | ) RE: SOCIAL SECURITY DISABILITY |
| CAROLYN W. COLVIN, Acting | ) APPEAL |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

Plaintiff Anthony Tony Trapani proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court recommends that this matter be AFFIRMED.

///

///

REPORT AND RECOMMENDATION
PAGE -1

## FACTS AND PROCEDURAL HISTORY

Plaintiff was born on XXXX, 1969.[1] He obtained a GED and has no past relevant work. (AR 33, 58.)

Plaintiff filed an application for SSI on June 1, 2010, alleging disability beginning January 1, 1995. His application was denied at the initial level and on reconsideration.

On November 29, 2011, ALJ Michael Gilbert held a hearing, taking testimony from plaintiff, a lay witness, and a vocational expert. (AR 42-100.) On March 22, 2012, the ALJ issued a decision finding plaintiff not disabled. (AR 19-34.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on January 12, 2013 (AR 1-5), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ acknowledged the prior unfavorable decision finding plaintiff not disabled through February 9, 2009. (AR 136-44.) The ALJ found a change of circumstances based on plaintiff's new impairment of traumatic brain injury. (AR 22.) The ALJ found plaintiff had not engaged in substantial

---

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
PAGE -2

gainful activity since the new application date of June 1, 2010.

At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found severe plaintiff's: anti-social personality disorder; polysubstance disorder; depressive disorder and anxiety disorder; cognitive disorder, not otherwise specified/traumatic brain injury; and headaches.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments during periods when he is not clean and sober to meet the criteria of sections 12.08 (Personality Disorders) and 12.09 (Substance Addiction Disorders) of the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ found that if plaintiff stopped the substance use, he would continue to have severe impairments at step two, but the impairments would not meet or equal any of the step three listed impairments. Therefore, the ALJ found drug addiction or alcoholism (DAA) to be a contributing factor material to disability, and continued with the sequential evaluation of disability.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform a full range of work at all exertional levels but with the following nonexertional limitations: he could have no greater than occasional exposure to the operational control of moving machinery or unprotected heights and hazardous machinery. He would be capable of performing simple, routine, repetitive tasks, with no greater than reasoning level number two. He could have no interaction with the public and no greater than occasional interaction with co-workers as part of the job duties.

01     Because plaintiff had no past relevant work, the ALJ considered plaintiff's ability to
02 perform other work with the assistance of a vocational expert.  The ALJ found plaintiff able to
03 perform a significant number of jobs in the national economy, including dish washer, hand
04 packer, and ground keeper.  Therefore, the ALJ found plaintiff not disabled.

05     This Court's review of the ALJ's decision is limited to whether the decision is in
06 accordance with the law and the findings supported by substantial evidence in the record as a
07 whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence means
08 more than a scintilla, but less than a preponderance; it means such relevant evidence as a
09 reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881
10 F.2d 747, 750 (9th Cir. 1989).  If there is more than one rational interpretation, one of which
11 supports the ALJ's decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278
12 F.3d 947, 954 (9th Cir. 2002).

13     Plaintiff assigns error to the ALJ's finding that DAA was a contributing factor material
14 to his disability, and alleges he failed to properly evaluate the medical opinions of Dr. Ginsberg,
15 Dr. Oyemaja, the state agency consultants, Ms. Sanders-Ross, ACBSW, Ms. McInnis, C.D.P.,
16 Dr. Ruddell, and Dr. Rasmussen.  He asks that the ALJ's decision be reversed and his claim
17 remanded for an award of benefits or, in the alternative, for additional proceedings.  The
18 Commissioner argues the ALJ's decision is supported by substantial evidence and should be
19 affirmed.

20                                                    DAA

21     A claimant is not entitled to disability benefits "if alcoholism or drug addiction would .
22 . . be a contributing factor material to the Commissioner's determination that the individual is

disabled." 42 U.S.C. § 423(d)(2)(C). Therefore, where relevant, an ALJ must conduct a drug abuse and alcoholism (DAA) analysis and determine whether a claimant's disabling limitations remain absent the use of drugs or alcohol. 20 C.F.R. §§ 404.1535, 416.935. That is, the ALJ must, first, identify disability under the five-step procedure and, second, conduct a DAA analysis to determine whether substance abuse was material to disability. *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). "If the remaining limitations would still be disabling, then the claimant's drug addiction or alcoholism is not a contributing factor material to his disability. If the remaining limitations would not be disabling, then the claimant's substance abuse is material and benefits must be denied." *Parra v. Astrue*, 481 F.3d 742, 747-48 (9th Cir. 2007).

Although plaintiff argues the ALJ did not properly determine that DAA was material to plaintiff's disability, he does not identify any specific error in the DAA methodology utilized by the ALJ. Rather, plaintiff argues the ALJ improperly evaluated the evidence before and after April 2011 (when plaintiff testified he became clean and sober). Plaintiff contends the ALJ dismissed all of the evidence prior to April 2011, and most of the evidence after that date, as tainted by past substance abuse, relying heavily on the adverse assessment of his credibility. However, the gravamen of plaintiff's argument is that the ALJ failed to properly evaluate the medical opinion evidence.

<u>Medical Evidence</u>

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not

contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons. *Id*. (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).  Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).  The ALJ may reject physicians' opinions "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes*, 881 F.2d at 751).  Rather than merely stating her conclusions, the ALJ "must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Id*.  (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

A.      Arthur Ginsberg, M.D.

Plaintiff was referred by the Division of Disability Services to Dr. Ginsberg for a neurologic evaluation on September 22, 2010. (AR 327-30.)  Dr. Ginsberg concluded that "[b]ased on my review of this patient's history and his neurologic evaluation, which includes severe headaches and severe cognitive impairment, as well as a prior history of incarceration for drugs, and a current status of being homeless, I would consider him to be gainfully unemployable at the present time." (AR 330.)

The ALJ gave "little weight" to Dr. Ginsberg's opinion, noting that Dr. Ginsberg found plaintiff to have a "severe cognitive impairment," yet reported no impaired cognitive findings during the neurological examination.  This left Dr. Ginsberg to rely on plaintiff's subjective report, which the ALJ found not credible.  (AR 31.)  At any rate, the ALJ noted, the question

was not whether plaintiff was disabled – the ALJ agreed that plaintiff should be found disabled at step three. Rather, the question was whether plaintiff's DAA was material, an issue that Dr. Ginsberg did not address.

Plaintiff asserts the ALJ rejected Dr. Ginsberg's opinion because he was unaware of plaintiff's substance abuse. Although, in fact, it does appear Dr. Ginsberg was unaware of plaintiff's substance abuse (*see* AR 328 ("He does not smoke or drink")), this was not one of the reasons the ALJ gave "little weight" to Dr. Ginsberg's opinion. Plaintiff attempts to deflect the ALJ's discounting of Dr. Ginsberg's unsupported finding of cognitive impairment by arguing he did not actually conduct a cognitive evaluation, but relied solely on the records as a basis for this finding. Plaintiff's point is not well taken, as Dr. Ginsberg stated specifically that his opinion was based both on the patient's history "and his neurologic evaluation." (AR 330.) Plaintiff does not dispute the absence of exam findings showing cognitive impairment, nor does the doctor specifically reference any of the medical records as support for his conclusions.

Plaintiff also attempts, without success, to dispute the ALJ's characterization of Dr. Ginsberg's opinions as based on plaintiff's subjective reports. Dr. Ginsberg clearly stated that "this patient's history" was one of the bases for his opinions. (*Id.*)

Finally, although not mentioned by the ALJ in the decision,[2] Dr. Ginsberg also based his opinion that plaintiff was "gainfully unemployable" on plaintiff's criminal record and homelessness. (*Id.*) Neither of these conditions would satisfy the necessary showing of a "medically determinable physical or mental impairment" causing an inability to perform

---

2 *See Warre v. Comm'r of the SSA*, 439 F.3d 1001, 1005 n.3 (9th Cir. 2006) (finding it appropriate for the reviewing court to consider reasons offered not "to invent a new ground of decision[,]" but to provide "additional support for the Commissioner's and the ALJ's position.")

REPORT AND RECOMMENDATION
PAGE -7

01 substantial gainful activity.  20 C.F.R. § 404.1505(a).

02 The Court finds no error in the ALJ's consideration of Dr. Ginsberg's opinions.

03 B. <u>Julie Oyemaja, Psy.D.</u>

04 The Social Security Administration referred plaintiff to Dr. Oyemaja on October 5, 05 2010 for a psychological evaluation.  (AR 331-36.)  Dr. Oyemaja concluded it was "highly 06 unlikely" plaintiff would ever be able "to be competitively full time employed due to his 07 cognitive, emotional, and behavioral concerns."  (AR 334.)  She commented that plaintiff was 08 "a very ill individual in every respect, and his lack of social resources and homelessness 09 exacerbates the matter."  (*Id*.)  The ALJ accepted this opinion for the time period that plaintiff 10 was involved with substance abuse (which was ongoing at the time Dr. Oyemaja conducted the 11 evaluation (AR 333)), but not for the period when plaintiff was sober and his behavior 12 improved. (AR 31.)  The ALJ also noted Dr. Oyemaja based her opinion, in part, on 13 non-disability related factors, such as lack of social resources and homelessness.

14 Plaintiff's assignment of error consists of the assertion that "[t]he ALJ claimed to accept 15 Dr. Oyemaja's opinion, but found that the objective evidence showed that without DAA, Mr. 16 Trapani was able to perform the jobs he identified at step five of his decision on a regular and 17 sustained basis.  Dr. Oyemaja's report does not support such a conclusion.  Neither does the 18 other evidence in the record." (Dkt. 20 at 9 (citation to administrative record omitted).) 19 Plaintiff fails to support this broad assertion with any legal argument.  *Greenwood v. Fed.* 20 *Aviation Admin.,* 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for an 21 appellant, and a bare assertion does not preserve a claim, particularly when a host of other 22 issues are presented for review.")  Although the plaintiff's reply brief is more expansive, the

Court finds those arguments waived. *United States ex rel. Meyer v. Horizon Health Corp.*, 565 F.3d 1195, 1199 n.1 (9th Cir. 2009) (new theory, first raised in a reply brief, is waived) (citing *United States v. Alcan Elec. & Eng'g, Inc.*, 197 F.3d 1014, 1020 (9th Cir. 1999) (arguments raised on appeal for the first time in a reply brief are waived)). At any rate, the Court finds the ALJ's consideration of Dr. Oyemaja's opinions to withstand scrutiny.

C.      Leslie Postovoit, Ph.D. and Bruce Eather, Ph.D.

Dr. Postovoit completed a Psychiatric Review Technique questionnaire on November 4, 2010 (AR 352-68, affirmed by Dr. Eather at AR 606.) As plaintiff notes, the ALJ failed to discuss this opinion.

Dr. Postovit did not conclude plaintiff was unemployable. To the contrary, the psychologist found plaintiff improved from a previous evaluation on November 12, 2009, and capable of performing work with essentially the same restrictions as those imposed by the ALJ. (*Compare* AR 26, *with* AR 369.) Furthermore, the psychologist's rating of plaintiff's functional limitations was actually <u>less</u> restrictive than that assessed by the ALJ. Dr. Postovoit assessed many limitations as "moderate" rather than "marked," and (in contrast to the ALJ) did not find plaintiff's impairments met or equaled any of the listed impairments. (*Compare* AR 25, *with* AR 362-363.)

As a general principle, an ALJ's error may be deemed harmless where it is "'inconsequential to the ultimate nondisability determination.'" *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*. Plaintiff fails to meet his burden of showing that the ALJ's omission constituted harmful error. *Id.* at 1111 ("'[T]he

burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.'") (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

D.  Dixie Sanders-Ross, A.C.B.S.W.

Dixie Sanders-Ross, A.C.B.S.W. (Academy of Certified Baccalaureate Social Workers) conducted a seventy-five minute intake assessment of plaintiff at Comprehensive Mental Health on December 23, 2010. (AR 639-57.) The ALJ gave "little weight" to Ms. Sanders-Ross's opinion that plaintiff was disabled because her assessment ignored plaintiff's substance abuse. (AR 32.) Plaintiff argues the ALJ's failure to give weight to Ms. Sanders-Ross amounts to an assumption that the social worker was incompetent: "The ALJ, who was not present at the evaluation, should not have substituted his opinion for that of a trained mental health provider." (Dkt. 20 at 12.)

Again, plaintiff's argument misses the mark. No special significance is given to the opinion of any medical source, not even to a treating physician, on issues reserved to the Commissioner, such as whether a claimant is disabled. 20 C.F.R. § 416.927(d)(3). Furthermore, the opinion of a social worker, such as Ms. Sanders-Ross, is given less weight than that of an "acceptable medical source" such as a licensed physician or certified psychologist. 20 C.F.R. § 416.913(d). The ALJ may discount the opinion of an "other source" such as Ms. Sanders-Ross based on germane reasons. *Smolen v. Chater*, 80 F.3d 1273, 1288-89 (9th Cir. 1996) (rejection of the testimony of a lay witness must be based on a reason "germane to the individual," rather than a wholesale dismissal of all witnesses of that group. (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)).

Here, the ALJ discounted Ms. Sanders-Ross's evaluation because she failed to account

for plaintiff's on-going substance abuse, instead accepting his representation that he "has become clean and sober." (AR 652.) Plaintiff, however, testified his clean and sober date was April 2011, several months after Ms. Sanders-Ross's evaluation. (AR 62.) The ALJ provided a germane reason for evaluating the opinion of Ms. Sanders-Ross.

E.   Jane McInnis, C.D.P.

Similarly, plaintiff fails to demonstrate error in the ALJ's consideration of the opinion of Ms. McInnis. Ms. McInnis met with plaintiff on January 18, 2011 to develop a treatment plan. She described plaintiff's substance abuse history as "in sustained full remission." (AR 611.) The ALJ found this contradicted by plaintiff's own testimony. (AR 32, 62.) The ALJ provided legally sufficient reasons for evaluating Ms. McInnis' opinions.

F.   Alysa Ruddell, Ph.D.

Dr. Ruddell completed a psychological evaluation questionnaire on August 19, 2011. (AR 700-06.) She did not review any records, and stated that the information in the evaluation "represents client report, unless specified otherwise." (AR 700.)

The ALJ gave no weight to Dr. Ruddell's assessment, finding it inconsistent with the objective evidence, and based largely on plaintiff's self-report. (AR 32.) The ALJ found Dr. Ruddell's conclusions about plaintiff's functional capacities "completely inconsistent" with the evidence, including plaintiff's demonstrated abilities during the evaluation. The ALJ commented: "This evaluator appears to be taking on the role of an advocate, inflating her entire report." (*Id.*) Plaintiff objects to the ALJ's characterization of Dr. Ruddell as an advocate, arguing his mental status evaluation was abnormal. (AR 703.)

However, the ALJ also based his consideration of Dr. Ruddell's opinion on her reliance

on plaintiff's self-report, and the lack of review of any medical records.  Dr. Ruddell clearly states that the information in the evaluation was based on plaintiff's report "unless specified otherwise."  (AR 700.)   Plaintiff has not challenged the ALJ's credibility assessment. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible.") (quoting *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)).

The ALJ also found Dr. Ruddell's report internally inconsistent. Dr. Ruddell characterized plaintiff's reports of hearing his own thoughts as "auditory hallucinations," which the ALJ questioned as "generally considered thinking." (AR 32, 705.) *See Morgan*, 169 F.3d at 603 (ALJ appropriately considers internal inconsistencies within and between physicians' reports).  Dr. Ruddell chose "marked" as the degree of severity of impairment in plaintiff's "ability to perform routine tasks without undue supervision," concluding plaintiff "did not seem to be able to sustain attention sufficiently to maintain focus and perform routine/rote tasks," but the observation cited by the doctor to illustrate this impairment was plaintiff's ability to successfully follow instructions to fill out a form, fold it, and place it on the counter.  (AR 703.)  Although plaintiff cites other findings in the mental status evaluation as abnormal, he does not specifically address those cited by the ALJ.

The Court does not find error in the ALJ's consideration of the opinions of Dr. Ruddell.

G.     Christina Rasmussen, Ph.D.

Dr. Rasmussen performed a psychological evaluation on December 19, 2011 (AR 707-19.)   The ALJ compared this evaluation, conducted after plaintiff's clean and sober date,

with that conducted in October 2010 by Dr. Oyemaja.  (AR 331-36.)  In the earlier evaluation, plaintiff was still abusing alcohol and was irritable and explosive during his examination.  (AR 332.)  In December 2011, when sober, he was cooperative and outgoing, answered the doctor's questions frankly with no defensiveness, and maintained a polite and helpful demeanor.  (AR 30, 712.)  The ALJ concluded plaintiff's mental symptoms were not as pronounced during periods of sobriety.

The ALJ noted the primary functional limitations assessed were related to plaintiff's aggressive behaviors, but the examples cited were by history and affected by substance abuse at the time, as contrasted with plaintiff's improved functioning during sobriety.  Accordingly, the ALJ accommodated any residual functional limitations with a RFC restriction on interaction with the public and no greater than occasional interaction with co-workers as part of the job duties.  The ALJ also accommodated Dr. Rasmussen's evaluation findings of normal, though not perfect, cognitive flexibility, and mild limitations with simple instructions, with a RFC restriction to the performance of simple, routine, repetitive tasks, with no greater than reasoning level number two.  (AR 30.)  The ALJ distinguished his assessment of plaintiff's credibility with that of Dr. Rasmussen, who found plaintiff credible.  Dr. Rasmussen noted that the assessed mental limitations were based on plaintiff's reports and the history he provided, as well as test results.  (AR 709-10.)  As previously noted, plaintiff does not challenge the ALJ's assessment of his credibility.

Plaintiff disputes the ALJ's failure to accept Dr. Rasmussen's finding that he suffered from borderline intellectual functioning, was unable to learn new tasks, and was markedly limited in his ability to interact with co-workers and supervisors.  Plaintiff disputes the

adequacy of the ALJ's accommodation of these limitations with the RFC adopted by the ALJ.

However, the Court finds the ALJ's evaluation of Dr. Rasmussen's opinion supported by substantial evidence and legally sufficient. "The ALJ is responsible for determining credibility and resolving conflicts in medical testimony." *Magallanes*, 881 F.2d at 750; *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). The Court does not find error in the ALJ's consideration of Dr. Rasmussen's evaluation.

## CONCLUSION

For the reasons set forth above, the Court recommends this matter should be AFFIRMED.

DATED this 22nd day of October, 2013.

Mary Alice Theiler
Chief United States Magistrate Judge